

1  LAW OFFICES OF CARLIN & BUCHSBAUM, LLP
   GARY R. CARLIN, CSBN: 44945
2  gary@carlinbuchsbaum.com
   BRENT S. BUCHSBAUM, CSBN: 194816
3  brent@carlinbuchsbaum.com
   LAUREL N. HAAG, CSBN: 211279
4  laurel@carlinbuchsbaum.com
   MAYA G. MORALES, CSBN: 245208
5  maya@carlinbuchsbaum.com
   555 East Ocean Blvd., Suite 818
6  Long Beach, California 90802
   Telephone: (562)432-8933; Facsimile: (562)435-1656

7  Attorneys for LESLIE SAKAGUCHI, Plaintiff

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11  LESLIE SAKAGUCHI,                      Case No. CV 12-1637 GAF (FFMx)

12              Plaintiff;                 [Originally filed in Los Angeles County
                                           Superior Court; Case No. BC477337]
13          vs.
                                           **THIRD AMENDED COMPLAINT**
14  EDUCATIONAL COMMISSION
    FOR FOREIGN MEDICAL                    (1) WRONGFUL TERMINATION IN
15  GRADUATES, an Illinois                 VIOLATION OF PUBLIC POLICY;
    corporation; SHARON TROWELL-           (2) VIOLATION OF CFRA; AND
16  ROMAN, an individual; PETER            (3) VIOLATION OF LABOR CODE
    O'COLMAIN, an individual; and          SECTION 233
17  DOES 1 through 250, inclusive,

18              Defendants                  [DEMAND FOR JURY TRIAL]

19

20

21

22

23

24      COMES NOW the Plaintiff, LESLIE SAKAGUCHI, (who hereinafter shall

25  be referred to as the "Plaintiff" or as "SAKAGUCHI"), who hereby

26  respectfully alleges, avers, and complains, as follows:

27  //

28

                          THIRD AMENDED COMPLAINT                        -1-

## PARTIES

1.  At all times herein mentioned, Plaintiff SAKAGUCHI is and has been a resident of Los Angeles County, State of California.

2.  Defendant EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES (hereinafter referred to as "ECFMG") is and at all times herein mentioned has been a Illinois company with the capacity to sue and to be sued, and doing business, with a principal place of business located at 100 N Sepulveda Blvd., Suite 1300, El Segundo, California 90245.

3.  Plaintiff is informed and believes and thereon alleges that each of the Defendants herein were at all times the agent, employee, or representative of each remaining Defendant and were at all times herein acting within and outside the scope and purpose of said agency and employment. Plaintiff further alleges that as to each Defendant, whether named, or referred to as a fictitious name, said Defendants supervised, ratified, controlled, acquiesced in, adopted, directed, substantially participated in, and/or approved the acts, errors, or omissions, of each remaining Defendant.

4.  The true names and capacities of the Defendants named herein as DOES 1 through 250, inclusive, whether individual, corporate, partnership, association, or otherwise, are unknown to Plaintiff who therefore sues these Defendants by such fictitious names. Plaintiff will request leave of court to amend this Complaint to allege their true names and capacities at such time as they are ascertained.

## JURISDICTION AND VENUE

5. Venue in this matter is proper under 28 U.S.C. § 1391(a)(2) as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the Central District of California.

6. This action was removed by Defendants, alleging that this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

## FACTUAL ALLEGATIONS

7. Plaintiff became employed by Defendant ECFMG as a patient trainer in or about October 2005.  Plaintiff was terminated by Defendant on or about January 20, 2011 after requesting and taking CFRA leave to care for her seriously ill mother.

8. In or about April 2010, Plaintiff's mother began to suffer from dementia, in addition to the diabetes, heart condition and thyroid problems.

9. Plaintiff informed her supervisor, PETER O'COLMAIN ("O'COLMAIN"), that she was providing care for her seriously ill mother.  Specifically, Plaintiff informed her supervisor that the care provided was unpredictable and that sometimes it was difficult to administer her mother's medication in a way that allowed Plaintiff to arrive at work exactly on time every day.

10. O'COLMAIN told Plaintiff to apply for CFRA leave for the flexible work schedule she was requesting.

11. In or about July 2010, Plaintiff submitted a CFRA request that was signed by her mother's physician. This request stated that Plaintiff needed a flexible work schedule with regard to her start/stop time because her mother was sometimes non-compliant with taking her medication and Plaintiff would require additional time to take care of her mother.

12. Plaintiff was scheduled to be at work at 8:15 a.m. Plaintiff would sometimes arrive at work 10 - 20 minutes late due to providing medical treatment for her seriously ill mother.

13. Despite Plaintiff's documented CFRA request for a flexible work schedule in order to provide medical treatment, Defendants deliberately ignored the provided medical opinion and penalized Plaintiff in or about October 2010 with a written reprimand for being late to work.

14. Plaintiff again informed her supervisor that she needed a flexible work schedule in order to care for her mother, as stated in the doctor's note of July 2010. In response, O'COLMAIN stated that he did not care what Plaintiff's excuse was, that Plaintiff could never be late.

15. Plaintiff complained to her supervisor regarding Defendant ECFMG's failure to comply with her CFRA request as Defendant ECFMG's handbook explicitly promotes flexible work schedules for its employees.

16. Plaintiff became extremely stressed and began to suffer from anxiety due to Defendant ECFMG's actions against her, including receiving a written reprimand for being tardy when ECFMG was aware of Plaintiff's need for a

1     flexible work schedule due to her mother's illness.

2

3  17.  Thereafter, in or about December 2011, Human Resources Manager
4        SHARON TROWELL-ROMAN ("TROWELL-ROMAN") contested
5        Plaintiff's request for CFRA and denied Plaintiff's request for a flexible
6        work schedule.

7

8  18.  Further, Defendant ECFMG contacted Plaintiff's mother's physician
9        without consent, violating her right to privacy and requesting information
10      about her mother's medical condition.

11

12  19.  Thereafter, Defendant ECFMG mischaracterized Plaintiff's mother's
13      physician's statement regarding the need for a flexible work schedule. The
14      physician never eliminated the need for periodic leave for times when
15      Plaintiff's mother was uncooperative with her medical treatment, but merely
16      clarified that on days where Plaintiff's mother *was* cooperative, Plaintiff
17      would be able to attend work at the regularly scheduled time.

18

19  20.  Plaintiff is informed and believes that Defendant ECFMG removed part of
20      Plaintiff's CFRA request itself via an alleged "addendum" without having
21      an interactive process between Plaintiff, the physician, and Defendant
22      ECFMG.

23

24  21.  Plaintiff submitted a "time off request form" on January 19, 2011 in order to
25      care for her mother. The next day, on January 20, 2011, Plaintiff was
26      abruptly terminated for allegedly having too many "tardies."

27

28  22.  Plaintiff is informed and believes that she was terminated because of her

1      protected activity, as described above.

2

3                    **FIRST CAUSE OF ACTION**

4        **(Wrongful Termination in Violation of Public Policy)**

5     **(SAKAGUCHI Against Defendants ECFMG and DOES 1 through 250)**

6

7 23.    Plaintiff incorporates by reference as though fully set forth herein the

8       allegations in all of the preceding paragraphs.

9

10 24.    At all times herein mentioned in this complaint, California Government

11       Code Section 12945.2 et seq. and California Labor Code section 233 were

12       in full force and effect and were binding on the Defendants and the

13       Defendants were subject to their terms, and therefore Defendants were

14       required to refrain from violations of public policy, including retaliatory

15       actions against Plaintiff on account of her taking a protected CFRA leave to

16       care for her seriously ill mother, as alleged in more detail above.

17

18 25.    Plaintiff became employed by Defendant ECFMG as a patient trainer in or

19       about October 2005. Plaintiff was terminated by Defendants, and each of

20       them, on or about January 20, 2011 after requesting and taking CFRA leave

21       to care for her seriously ill mother.

22

23 26.    In or about April 2010, Plaintiff's mother began to suffer from dementia, in

24       addition to the diabetes, heart condition and thyroid problems. Plaintiff

25       informed her supervisor, O'COLMAIN, that she was providing care for her

26       seriously ill mother. Specifically, Plaintiff informed him that the care

27       provided was unpredictable and that sometimes it was difficult to administer

28       her mother's medication in a way that allowed Plaintiff to arrive at work

1    exactly on time every day. Plaintiff's supervisor told her to apply for CFRA
2    leave for the flexible work schedule Plaintiff was requesting.

3

4 27.   In or about July 2010, Plaintiff submitted a CFRA request that was signed
5    by her mother's physician. This request stated that Plaintiff needed a
6    flexible work schedule with regard to her start/stop time because her mother
7    was sometimes non-compliant with taking her medication and Plaintiff
8    would require additional time to take care of her mother.

9

10 28.   Plaintiff was scheduled to be at work at 8:15 a.m. Plaintiff would sometimes
11    arrive at work 10 - 20 minutes late due to providing medical treatment for
12    her seriously ill mother.

13

14 29.   Despite Plaintiff's documented CFRA request for a flexible work schedule
15    in order to provide medical treatment, Defendants deliberately ignored the
16    provided medical opinion and penalized Plaintiff in or about October 2010
17    with a written reprimand for being late to work.

18

19 30.   Plaintiff again informed her supervisor that she needed a flexible work
20    schedule in order to care for her mother, as stated in the doctor's note of
21    July 2010. In response, O'COLMAIN stated that he did not care what
22    Plaintiff's excuse was, that Plaintiff could never be late.

23

24 31.   Plaintiff became extremely stressed and began to suffer from anxiety due to
25    Defendants' actions against her, including receiving a written reprimand for
26    being tardy when Defendant ECFMG was aware of Plaintiff's need for a
27    flexible work schedule due to her mother's illness.

28

**THIRD AMENDED COMPLAINT**      -7-

32. Plaintiff complained to her supervisor regarding Defendants' failure to comply with her CFRA request as Defendant ECFMG's handbook explicitly promotes flexible work schedules for its employees.

33. Thereafter, in or about December 2011, Human Resources Manager TROWELL-ROMAN contested Plaintiff's request for CFRA and denied Plaintiff's request for a flexible work schedule.

34. Further, Defendant ECFMG contacted Plaintiff's mother's physician without consent, violating her right to privacy and requesting information about her mother's medical condition.

35. Thereafter, Defendant ECFMG mischaracterized Plaintiff's mother's physician's statement regarding the need for a flexible work schedule. The physician never eliminated the need for periodic leave for times when Plaintiff's mother was uncooperative with her medical treatment, but merely clarified that on days where Plaintiff's mother *was* cooperative, Plaintiff would be able to attend work at the regularly scheduled time.

36. Plaintiff is informed and believes that Defendant ECFMG removed part of Plaintiff's CFRA request itself via an alleged "addendum" without having an interactive process between Plaintiff, the physician, and Defendant ECFMG.

37. Plaintiff submitted a "time off request form" on January 19, 2011 in order to care for her mother. The next day, on January 20, 2011, Plaintiff was abruptly terminated for allegedly having too many "tardies."

38. Defendants' above described conduct is in violation of various statutes and the decisional law of this state and country, including but not limited to California Government Code Section 12945.2 et seq. and in violation of Labor Code section 233.

39. As a direct and legal result of Defendants' discrimination and retaliatory actions against Plaintiff, Plaintiff has suffered and continues to suffer general, consequential and special damages including but not limited to substantial losses in earnings, other employment benefits, physical injuries, physical sickness, as well as emotional distress, plus medical expenses, future medical expenses, and attorneys' fees, all to her damage in an amount according to proof.

40. Said termination was wrongful and justifies the imposition of punitive damages since the termination was against public policy. Defendants intentionally discriminated against Plaintiff on account of her protected activity and classification, and in doing so, Defendants acted maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiff. Based upon the foregoing, Plaintiff is entitled to recover punitive damages from Defendants and each of them, in an amount according to proof.

## SECOND CAUSE OF ACTION

**(Violation of Gov. Code §12945.2 (California Family Rights Act))**
**(SAKAGUCHI Against Defendants ECFMG and DOES 1 through 250)**

41. Plaintiff incorporates by reference as though fully set forth herein the allegations in all of the preceding paragraphs.

1

2 42. Plaintiff timely filed a complaint of discrimination with the Department of
3 Fair Employment and Housing alleging inter alia violations of Government
4 Code § 12945.2, and all other applicable provisions, fully exhausting
5 Plaintiff's administrative remedies, and has been issued Right to Sue
6 Letters, conferring jurisdiction on this court over these claims.

7

8 43. Defendant ECFMG is a business entity regularly employing at least the
9 minimum number of employees upon which legal duties and obligations
10 arise under various laws and statutes, including the Fair Employment and
11 Housing Act ("FEHA") and the California Family Rights Act ("CFRA").

12

13 44. In or about April 2010, Plaintiff's mother began to suffer from dementia, in
14 addition to the diabetes, heart condition and thyroid problems. Plaintiff
15 informed her supervisor, O'COLMAIN, that she was providing care for her
16 seriously ill mother. Specifically, Plaintiff informed him that the care
17 provided was unpredictable and that sometimes it was difficult to administer
18 her mother's medication in a way that allowed her to get to work exactly on
19 time every day. O'COLMAIN told Plaintiff to apply for CFRA leave for the
20 flexible work schedule she was requesting.

21

22 45. In or about July 2010, Plaintiff submitted a CFRA request that was signed
23 by her mother's physician. This request stated that Plaintiff needed a
24 flexible work schedule with regard to her start/stop time because her mother
25 was sometimes non-compliant with taking her medication and Plaintiff
26 would require additional time to take care of her mother.

27

28 46. Plaintiff was scheduled to be at work at 8:15 a.m. Plaintiff would sometimes

1    arrive at work 10 - 20 minutes late due to providing medical treatment for
2    her seriously ill mother.

3

4  47.  Despite Plaintiff's documented CFRA request for a flexible work schedule
5       in order to provide medical treatment, Defendant ECFMG deliberately
6       ignored the provided medical opinion and penalized Plaintiff in or about
7       October 2010 with a written reprimand for being late to work.

8

9  48.  Plaintiff again informed her supervisor that she needed a flexible work
10      schedule in order to care for her mother, as stated in the doctor's note of
11      July 2010.  In response, O'COLMAIN stated that he did not care what
12      Plaintiff's excuse was, that Plaintiff could never be late.

13

14 49.  Plaintiff became extremely stressed and began to suffer from anxiety due to
15      Defendants' actions against her, including receiving a written reprimand for
16      being tardy when Defendant ECFMG was aware of Plaintiff's need for a
17      flexible work schedule due to her mother's illness.

18

19 50.  Plaintiff complained to her supervisor regarding Defendants' failure to
20      comply with her CFRA request as Defendant ECFMG's handbook explicitly
21      promotes flexible work schedules for its employees.

22

23 51.  Thereafter, in or about December 2011, Human Resources Manager
24      TROWELL-ROMAN contested Plaintiff's request for CFRA and denied
25      Plaintiff's request for a flexible work schedule.

26

27 52.  Further, Defendant ECFMG contacted Plaintiff's mother's physician
28      without consent, violating her right to privacy and requesting information

1     about her mother's medical condition

2

3  53.  Thereafter, Defendant ECFMG mischaracterized Plaintiff's mother's

4     physician's statement regarding the need for a flexible work schedule. The

5     physician never eliminated the need for periodic leave for times when

6     Plaintiff's mother was uncooperative with her medical treatment, but merely

7     clarified that on days where Plaintiff's mother *was* cooperative, Plaintiff

8     would be able to attend work at the regularly scheduled time.

9

10 54.  Plaintiff is informed and believes that Defendant ECFMG removed part of

11    Plaintiff's CFRA request itself via an alleged "addendum" without having

12    an interactive process between Plaintiff, the physician, and Defendant

13    ECFMG.

14

15 55.  Plaintiff submitted a "time off request form" on January 19, 2011 in order to

16    care for her mother. The next day, on January 20, 2011, Plaintiff was

17    abruptly terminated for allegedly having too many "tardies."

18

19 56.  At all time herein mentioned in this Complaint, Government Code

20    §12945.2, was in full force and effect and was binding on the Defendants

21    and the Defendants were subject to its terms, and Plaintiff qualified for

22    leave under the statute. Plaintiff had not exceeded her CFRA/FMLA leave

23    of 12 weeks. Nevertheless, Defendants wrongfully terminated the Plaintiff

24    for reasons in a manner contrary to public policy, on a pre-textual basis, as a

25    result of and in retaliation for Plaintiff exercising her right to take medical

26    leave, in direct violation of Government Code §12945.2.

27

28 57.  Plaintiff engaged in protected activity, in that she exercised her right under

family care qualifying leave, pursuant to Government Code §12945.2. As a direct result of her having taken protected leave, Plaintiff was terminated for having taken that protected leave. Further, Defendants attempted to interfere with the doctor's determination that the leave was a reasonable request by Plaintiff given the situation.

58. Defendants conduct above described is in violation of various statutes and state law decisions, including Government code §12945.2.

59. As a direct and legal result of Defendants' retaliatory actions against Plaintiff as herein referenced, Plaintiff has suffered and continues to suffer general, consequential and special damages including but not limited to substantial losses in earnings, other employment benefits, physical injuries, physical sickness, as well as emotional distress, plus medical expenses, and attorneys' fees, all to her damage in an amount according to proof.

60. Said termination and retaliation was wrongful and justifies the imposition of punitive damages since the termination was against public policy. Defendants committed the acts herein maliciously, fraudulently and oppressively, with an evil intent and sinister plans with the wrongful intention of injuring Plaintiff, and/or in conscious disregard of Plaintiff's rights by terminating her because she took a protected medical leave, knowing that she qualified for protected leave under CFRA and that she had not exhausted her entitlement to leave under CFRA at the time of her termination. Based upon the foregoing, Plaintiff is entitled to recover punitive damages from Defendants, and each of them, in an amount according to proof.

## THIRD CAUSE OF ACTION

### (Violation of Labor Code Section 233)

### (SAKAGUCHI Against Defendants ECFMG and DOES 1 through 250)

61. Plaintiff incorporates by reference as though fully set forth herein the allegations in all of the preceding paragraphs.

62. California Labor Code §233 provides that "[a]ny employer who provides sick leave for employees shall permit an employee to use in any calendar year the employee's accrued and available sick leave entitlement, in an amount not less than the sick leave that would be accrued during six months at the employee's then current rate of entitlement, to attend to an illness of a child, parent, spouse, or domestic partner of the employee." Further, no employer shall "deny an employee the right to use sick leave or discharge... an employee for using, or attempting to exercise the right to use, sick leave to attend to an illness of ...a parent...of the employee." California Labor Code §233.

63. In or about April 2010, Plaintiff's mother began to suffer from dementia, in addition to the diabetes, heart condition and thyroid problems. Plaintiff informed her supervisor, O'COLMAIN, that she was providing care for her seriously ill mother. Specifically, Plaintiff informed him that the care provided was unpredictable and that sometimes it was difficult to administer her mother's medication in a way that allowed her to get to work exactly on time every day. O'COLMAIN told Plaintiff to apply for CFRA leave for the flexible work schedule she was requesting.

64. In or about July 2010, Plaintiff submitted a CFRA request that was signed by her mother's physician. This request stated that Plaintiff needed a flexible work schedule with regard to her start/stop time because her mother was sometimes non-compliant with taking her medication and Plaintiff would require additional time to take care of her mother.

65. Plaintiff was scheduled to be at work at 8:15 a.m. Plaintiff would sometimes arrive at work 10 - 20 minutes late due to providing medical treatment for her seriously ill mother.

66. Despite Plaintiff's documented CFRA request for a flexible work schedule in order to provide medical treatment, Defendant ECFMG deliberately ignored the provided medical opinion and penalized Plaintiff in or about October 2010 with a written reprimand for being late to work.

67. Plaintiff became extremely stressed and began to suffer from anxiety due to Defendants' actions against her, including receiving a written reprimand for being tardy when Defendant ECFMG was aware of Plaintiff's need for a flexible work schedule due to her mother's illness.

68. Plaintiff complained to her supervisor regarding Defendant ECFMG's failure to comply with her CFRA request as Defendant ECFMG's handbook explicitly promotes flexible work schedules for its employees.

69. Thereafter, in or about December 2011, Human Resources Manager TROWELL-ROMAN contested Plaintiff's request for CFRA and denied

1    Plaintiff's request for a flexible work schedule.

2

3   70.   Further, Defendant ECFMG contacted Plaintiff's mother's physician
4         without consent, violating her right to privacy and requesting information
5         about her mother's medical condition.
6

7

8   71.   Thereafter, Defendant ECFMG mischaracterized Plaintiff's mother's
9         physician's statement regarding the need for a flexible work schedule. The
10        physician never eliminated the need for periodic leave for times when
11        Plaintiff's mother was uncooperative with her medical treatment, but merely
12        clarified that on days where Plaintiff's mother *was* cooperative, Plaintiff
13        would be able to attend work at the regularly scheduled time.

14

15  72.   Plaintiff is informed and believes that Defendant ECFMG removed part of
16        the CFRA request itself via an alleged "addendum" without having an
17        interactive process between Plaintiff, the physician, and Defendant
18        ECFMG.

19

20  73.   Plaintiff submitted a "time off request form" on January 19, 2011 in order to
21        care for her mother. The next day, on January 20, 2011, Plaintiff was
22        abruptly terminated for allegedly having too many "tardies."
23

24

25  74.   Plaintiff is informed and believes that Defendant ECFMG provides sick
26        leave to its employees and that such sick leave is on an accrual basis.
27

28

75. Plaintiff is informed and believes that she had accrued sick leave available that she could have used intermittently to provide periodic care to her mother in the mornings. However, Defendants did not allow Plaintiff to use her available, accrued sick leave and instead terminated Plaintiff's employment for having arrived at work late due to her providing care to her sick mother.

76. Plaintiff is therefore entitled to reinstatement and to actual damages or one day's pay, whichever is greater, and to appropriate equitable relief from Defendants. In addition, Plaintiff is entitled to an award of reasonable attorney's fees.

## PRAYER

1. For damages according to proof, including loss of earnings, deferred compensation, overtime and other employment benefits;

2. For general damages, according to proof;

3. For other special damages according to proof, including but not limited to reasonable medical expenses;

4. For punitive damages according to proof;

5. For costs incurred by Plaintiff, including reasonable attorneys' fees and costs of suit, in obtaining the benefits due Plaintiffs and for violations of Plaintiff's civil rights as set forth above; and

///

///

///

THIRD AMENDED COMPLAINT                                    -17-

1    6.      For such other and further relief as the court deems just and proper.

2    Dated: June 27, 2012                    THE LAW OFFICES OF CARLIN &
                                             BUCHSBAUM
3                                            A Limited Liability Partnership
4
5
                                     By
6                                    Maya G. Morales, Attorneys for Plaintiff,
7                                    LESLIE SAKAGUCHI
8
9
10                              **DEMAND FOR JURY TRIAL**
11
12          Plaintiff hereby respectfully demands a jury trial.
13
14
15   Dated: June 27, 2012                    THE LAW OFFICES OF CARLIN &
                                             BUCHSBAUM
16                                           A Limited Liability Partnership
17
18                                   By
19                                   Maya G. Morales, Attorneys for Plaintiff,
                                     LESLIE SAKAGUCHI
20
21
22
23
24
25
26
27
28

1 | **PROOF OF SERVICE**

2
STATE OF CALIFORNIA, COUNTY OF LOS ANGELES
3

4 | I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 555 East Ocean Blvd., Suite 818, Long Beach, California 90802.

5

6 | On June 28, 2012, I served the foregoing document described as:

7 | **THIRD AMENDED COMPLAINT**

8

9 | The true copies thereof were enclosed in a sealed envelope and addressed as follows:

10 | **Counsel for Defendants**
**Barbara A. Fitzgerald, Esq.**
11 | *bfitzgerald@morganlewis.com*
**Salvatore Picariello, Esq.**
12 | **Kathryn T. McGuigan, Esq.**
*kmcguigan@morganlewis.com*
13 | **MORGAN, LEWIS & BOCKIUS, LLP**
**300 South Grand Avenue, 22nd Floor**
14 | **Los Angeles, California 90071-3132**

15 | **Facsimile: (213)612-2501**

16

17 | ___ **(ELECTRONICALLY)** I caused a true and correct copy thereof to be electronically filed using the Court's Electronic Court Filing ("ECF")
18 | System and service was completed by electronic means by transmittal of a Notice of Electronic Filing on the registered participants of the ECF System.
19 | I served those parties who are not registered participants of the ECF System as indicated below.

20

21 | **XX** **(BY MAIL)** I am readily familiar with my employer's practice for collection and processing of documents for mailing with the United States Postal Service and that practice is that the documents are deposited with the United States
22 | Postal Service with postage fully prepaid the same day as the day of collection in the ordinary course of business. On this date, I served the above interested
23 | parties following my employer's ordinary business practices.

24

25 | ___ **(BY OVERNIGHT DELIVERY)** I caused such envelope to be delivered via overnight delivery (FedEx) addressed as indicated above for deposit and delivery by The Law Offices of Carlin & Buchsbaum, LLP, following
26 | ordinary business practices

27 | ___ **(BY PERSONAL SERVICE)** I caused such envelope to be delivered by hand to the offices of the addressee.
28

___ **(BY FACSIMILE)** I caused such document to be served on all parties to this action via facsimile at the numbers indicated on the attached service list pursuant to California Rules of Court, Rule 2006. The facsimile machine I used complied with Rule 2003 and no error was reported by the machine. Pursuant to Rule 2006, I caused the machine to print a transmission record of the transmission, a copy of which is attached to this document.

**XX** **(FEDERAL)** I declare under penalty of perjury under the laws of the United States that the above is true and correct.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed, June 28, 2012, at Long Beach, California.

KIMBERLY KELLY, Declarant